UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| BANK OF THE WEST, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) No. 1:16-cv-02902-JMS-MJD ) |
| CL TECH, INC., and<br>FRED C. STADLER, | ) ) ) ) |
| Defendants. | ) ) |

# **ORDER**

Bank of the West ("BOW") is the holder of four personal guarantees ("Guarantees") executed by Fred C. Stadler, each of which each guarantee payment under four commercial equipment leases (the "Leases") executed by CL Tech, Inc. ("CL Tech"). CL Tech failed to make timely payments on the Leases and therefore defaulted. Mr. Stadler also failed to timely pay the amounts due under the Leases and is under default pursuant to the Guarantees. Following Mr. Stadler's and CL Tech's defaults, BOW repossessed three of the four pieces of commercial equipment subject to the Leases and contracted with an outside vendor to sell the equipment at auction. BOW filed this action to recover the remaining deficiency from Mr. Stadler under the Leases and Guarantees.

Presently pending before the Court is BOW's Motion for Summary Judgment against Mr. Stadler for breaching the Guarantees.[1] [Filing No. 45.] Defendants did not respond to the facts asserted by BOW.

---

[1] On April 17, 2017, a Clerk's Entry of Default was entered against CL Tech for failure to plead or otherwise defend this action pursuant to Federal Rule of Civil Procedure 55(a). [Filing No. 31.]

# I.
## BACKGROUND

**A. Lease 1**

On June 26, 2014, CL Tech entered into Commercial Lease Agreement No. 0113734-001 ("Lease 1") with Trinity, a division of BOW, for the lease of a New Fanuc R-2000iB/165R 6-Axis Robotic Machining System ("Lease 1 Equipment"). [Filing No. 45-1 at 3.] BOW purchased the Lease 1 Equipment for $248,680.00. [Filing No. 45-1 at 3.] Lease 1 Equipment, which was a programmable robot that was part of a much larger cell, included "soft costs" incurred in programming the robot for use specifically with that cell, which hold no value in a secondary market. [Filing No. 45-1 at 3.]

Lease 1 commenced on November 1, 2014, and lasted for 63 months. [Filing No. 1-3 at 1.] CL Tech agreed to pay a rental fee of $4,720.08 per month. [Filing No. 1-3 at 1.] Lease 1 stated that if the rental fee "is not paid within 5 days after its due date, [CL Tech] agree[s] to promptly pay a late charge of 10% of the past due amount … plus interest on any amounts over 30 days past due at the rate of 1.5% per payment period." [Filing No. 1-3 at 2.]

Lease 1 also provided that failure to timely pay the rental fee would result in a default. [Filing No. 1-3 at 3.] In the event of default, Lease 1 stated that:

> Upon such default, we may, at our option, do one or more of the following: a) require you to immediately pay the remaining amounts due under this Agreement including but not limited to the balance of unpaid Rentals discounted to its present value at a rate of 3% per year; b) terminate this Agreement and/or any other agreements we have entered into with you; c) require you to immediately pay us the value of the Equipment or promptly return the Equipment to us in good condition; … and f) use any other remedies available to us at law or equity.…You agree to pay all of our costs to enforce this Agreement including reasonable

---

BOW has simultaneously filed a motion for default judgment against CL Tech. [Filing No. 47.] The Court will consider the motion for default judgment in a separate order.

attorney's fees and the costs of repossessing, refurbishing, sorting and selling the Equipment. If we take possession of the Equipment, we may sell or otherwise dispose of it at a public or private sale, and apply the proceeds (after deducting our disposition costs) to the amounts that are still due to us. Our acceptance of any amount due hereunder which is less than payment in full of all amounts due and owing at that time shall not constitute a waiver of our right to receive payment in full.

[Filing No. 1-3 at 2.]

On the same date that CL Tech signed Lease 1, Mr. Stadler executed a Personal Guaranty ("Lease 1 Guaranty"), in which he personally guaranteed CL Tech's performance of all obligations set forth in Lease 1. [Filing No. 1-4.] In the Lease 1 Guaranty, Mr. Stadler promised to pay all expenses, including reasonable attorneys' fees, incurred to enforce the Guaranty. [Filing No. 1-4.]

**B. Lease 2**

On April 1, 2015, CL Tech entered into Lease Agreement No. 0003521-011) ("Lease 2") with Manufacturer Capital, LLC for the lease of a new Roto-Flo 4-1084#DOJ95L Production Racks w/ Spacers S/N, one new Roto-Flo 3-383#BJ107L Production Racks w/ Spacers S/N, and one new WCEC Robotic Material Handling Cell Training S/N ("Lease 2 Equipment"). [Filing No. 1-5 at 1.] The "Initial Term of Lease" began on April 1, 2015, for a period of 60 months. [Filing No. 1-5 at 1.] CL Tech agreed to pay a monthly rental fee of $528.31. [Filing No. 1-5 at 1.] Lease 2 stated that any "fail[ure] to pay any Lease Payment or any other payment within 10 days of its due date" constitutes a default. [Filing No. 1-5 at 3.]

Lease 2 provided the following remedies in the event of a default:

If a Default occurs, Lessor may do one or more of the following: (i) Lessor may cancel or terminate this Lease or any other agreement that Lessor has entered into with Lessee; (ii) Lessor may require Lessee to immediately pay Lessor, as compensation for loss of Lessor's bargain and not as a penalty, a sum equal to the Casualty Value as set forth in paragraph 10; (iii) Lessor may require Lessee to deliver the Equipment to Lessor as set forth in paragraph 7; (iv) Lessee agrees to

> pay all of Lessor's or its agents or assigns costs of enforcing Lessor's right against Lessee including reasonable attorney's fees; … and (vi) charge interest on all past due amounts at 1% per month; and (vii) Lessor or it's [sic] agent may peacefully exercise any other right or remedy available at law or in equity. If Lessor takes possession of the Equipment Lessor may sell or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after deducting costs related to the sale or disposition of the Equipment) to the amounts that Lessee owes Lessor. . . . Lessee will remain responsible for any amounts that are due after Lessor has applied such net proceeds. . . . Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or equity. No express or implied waiver of any default shall constitute a waiver of any of Lessor's other rights.

[Filing No. 1-5 at 3.]

In connection with Lease 2, Mr. Stadler executed a Personal Guaranty dated April 1, 2015 ("Lease 2 Guaranty"), wherein he guaranteed CL Tech's performance of all of its obligations under Lease 2. [Filing No. 1-6.]

On April 23, 2015, BOW and Manufacturers Capital, LLC entered an agreement to assign the Lease 2 Guaranty to BOW. [Filing No. 1-7.]

**C. Lease 3**

On July 26, 2013, CL Tech entered into Lease Agreement No. 001156-012 ("Lease 3") with Connext Financial, Ltd. for the lease of an Okuma Genos L400 Lathe ("Lease 3 Equipment"). [Filing No. 1-8.] Lease 3 was signed by Connext Financial, Ltd. on August 1, 2013 and by Mr. Stadler on July 26, 2013.[2] [Filing No. 1-8 at 1.] CL Tech agreed to pay a monthly lease payment of $1,545.80.

Pursuant to Lease 3, any failure to pay a lease payment within 10 days of its due date constituted a default. [Filing No. 1-8 at 3.] Lease 3 provided the following remedies upon default:

> If a Default occurs, Lessor may do one or more of the following: (i) Lessor may cancel or terminate this Lease or any other agreement that Lessor has entered into

---

[2] BOW's brief, citing to pages 1 and 5 of Lease 3, states that Lease 3 took effect on September 1, 2013. [Filing No. 46 at 6.] The pages cited, however, do not state when Lease 3 commenced.

4

> with Lessee; (ii) Lessor may require Lessee to immediately pay Lessor, as compensation for loss of Lessor's bargain and not as a penalty, a sum equal to the Casualty Value; (iii) Lessor may require Lessee to deliver the Equipment to Lessor as set forth in paragraph 7; (iv) Lessee agrees to pay all of Lessor's or its agents or assigns costs of enforcing Lessor's rights against Lessee including reasonable attorney's fees; … and (vi) charge interest on all past due amounts at 1% per month; and (vii) Lessor or it's [sic] agent may peacefully exercise any other right or remedy available at law or in equity. If Lessor takes possession of the Equipment, Lessor may sell or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after deducting all costs related to the sale or disposition of the Equipment) to the amounts that Lessee owes Lessor. . . . Lessee will remain responsible for any amounts that are due after Lessor has applied such net proceeds. . . . Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or equity. No express or implied waiver of any default shall constitute a waiver of any of Lessor's other rights.

[Filing No. 1-8 at 3.]

In connection with Lease 3, Mr. Stadler executed a Personal Guaranty dated July 26, 2013 ("Lease 3 Guaranty"), wherein he guaranteed CL Tech's performance of all obligations under Lease 3. [Filing No. 1-9.]

By assignment dated August 1, 2013, Connext Financial, Ltd. assigned Lease 3 and the Lease 3 Guarantee to BOW. [Filing No. 1-9.]

**D. Lease 4**

On July 26, 2013, CL Tech entered into Lease Agreement No. 001156-013 with Connext Financial, Ltd. ("Lease 4") for the lease of a Master 3DGage Six-Axis CMM Machine ("Lease 4 Equipment"). [Filing No. 1-11.] The "Initial Term of Lease" for Lease 4 was 60 months and was signed by Connext Financial, Ltd. and Mr. Stadler on August 5, 2013 and July 26, 2013, respectively.[3] Pursuant to an amendment to Lease 4 on September 4, 2013, CL Tech agreed to pay a monthly rental payment of $920.47. [Filing No. 1-11 at 5.]

---

[3] BOW cited Lease 4 as [Filing No. 1-8], which is the citation for Lease 3. [Filing No. 46 at 7.] The Court presumes that BOW intended to cite to [Filing No. 1-11], which is labeled as Lease 4.

5

CL Tech agreed that failure to pay any rental payment due within 10 days of its due date would constitute a default under Lease 4. Lease 4 provided the following remedies in the event of default:

> If a Default occurs, Lessor may do one or more of the following: (i) Lessor may cancel or terminate this Lease or any other agreement that Lessor has entered into with Lessee; (ii) Lessor may require Lessee to immediately pay Lessor, as compensation for loss of Lessor's bargain and not as a penalty, a sum equal to the Casualty Value; (iii) Lessor may require Lessee to deliver the Equipment to Lessor as set forth in paragraph 7; (iv) Lessee agrees to pay all of Lessor's or its agents or assigns costs of enforcing Lessor's rights against Lessee including reasonable attorney's fees; … and (vi) charge interest on all past due amounts at 1% per month; and (vii) Lessor or it's [sic] agent may peacefully exercise any other right or remedy available at law or in equity. If Lessor takes possession of the Equipment, Lessor may sell or otherwise dispose of it with or without notice, at a public or private sale, and apply the net proceeds (after deducting all costs related to the sale or disposition of the Equipment) to the amounts that Lessee owes Lessor. . . . Lessee will remain responsible for any amounts that are due after Lessor has applied such net proceeds. . . . Each remedy shall be cumulative and in addition to any other remedy referred to above or otherwise available to Lessor at law or equity. No express or implied waiver of any default shall constitute a waiver of any of Lessor's other rights.

[Filing 1-11 at 3.]

In connection with Lease 4, Mr. Stadler executed a Personal Guaranty dated July 26, 2013 ("Lease 4 Guaranty"), wherein he guaranteed CL Tech's performance of all obligations under Lease 4. [Filing No. 1-12.]

By Assignment dated August 5, 2013, Connext Financial, Ltd. assigned Lease 4 and the Lease Guaranty to BOW. [Filing No. 1-13.]

Pursuant to the assignments, BOW became the holder of all four Leases and the Guarantees.

**E. Default under the Leases**

CL Tech and Mr. Stadler failed to timely pay scheduled lease payments under the Leases and are in default of their respective Leases and Guarantees. [Filing No. 45-1 at 5.] By letter dated

6

March 9, 2016, BOW provided Notice of Default and Notice of Termination of Leases ("Notice of Default") to Defendants as a result of Defendants' defaults under the Lease Documents and demanded immediate payment of all amounts due and owing under the Leases. [Filing No. 1-14.]

By letter dated July 7, 2016, BOW provided Notice of Secured Party Public Sale and Right of Redemption to Defendants ("Notice of Public Sale"), notifying Defendants that it intended to sell or otherwise dispose of the Lease 1 Equipment, Lease 3 Equipment, and Lease 4 Equipment ("Auctioned Equipment") through an online public auction conducted by Resell-CNC, LLC ("Resell") beginning on August 9, 2016 through August 18, 2016 ("Auction"). [Filing No. 1-15.] CL Tech and Sadler received the Notice of Public Sale on July 12, 2016. [Filing No. 45-3.]

Resell included the Auctioned Equipment in the Auction. [Filing No. 45-2 at 3.] The Lease 1 Equipment and Lease 4 Equipment were auctioned together as one item, and sold for a combined winning bid of $14,800.00. [Filing No. 45-2 at 3.] The Lease 3 Equipment sold for a winning bid of $31,200.00. [Filing No. 45-2 at 3.]

After adjusting for commission, the buyer's premium, and the minimum sale price requirement set forth in the agreement between BOW and Resell, Resell remitted net sale of proceeds to Bow of $31,500.00 for the sale of the Lease 3 Equipment and $13,500.00 for the combined sale of the Lease 1 Equipment and Lease 4 Equipment. [Filing No. 45-2 at 4.][4]

**F. Damages**

---

[4] It is unclear to the Court how, after adjusting for commission, premium, and the minimum sale price requirement, Resell remitted more money than the original winning bid for the Lease 3 Equipment. Nonetheless, since Defendants have failed to respond in any way to this claim, the Court accepts this fact.

In its brief for summary judgment, BOW has set forth the amount of damages, including accrued interest, it is owed under the Leases. [Filing No. 46 at 11-16.] Defendants did not respond or contest BOW's calculations, which the Court accepts as true for purposes of damages.[5]

## II.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Affidavits or declarations must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on matters stated. Fed. R. Civ. P. 56(c)(4). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the

---

[5] The Court notes that, following submission of BOW's summary judgment brief, Mr. Stadler filed his Statement of Claims or Defenses wherein he claims that the sales were not done in a commercially reasonable manner. [Filing No. 50 at 1.] Aside from this filing, however, neither Mr. Stadler nor CL Tech submitted any evidence to support this conclusory assertion, and therefore it is deemed waived.

suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them," *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

**III.**
**DISCUSSION**

Under Indiana law, "[a]n offer, acceptance, consideration, and a manifestation of mutual assent establish the existence of a contract." *Ind. Dep't of Corr. v. Swanson Servs. Corp.*, 820 N.E.2d 733, 737 (Ind. Ct. App. 2005) (quotation and citation omitted). "[T]he essential elements

9

for a breach of contract claim are: (1) the existence of a contract; (2) the defendant's breach thereof; and (3) damages." *Hopper v. Colonial Motel Props., Inc.*, 762 N.E.2d 181, 187 (Ind. Ct. App. 2002).

BOW has set forth sufficient evidence to establish that the Leases constituted valid contracts between the parties and that Mr. Stadler executed the Guarantees rendering him contractually liable for any default by CL Tech. *See* Sections I.A-D. BOW has also established that CL Tech did not fulfill its monetary obligations under the Leases, thereby resulting in a breach of the Leases and personal liability for Mr. Stadler pursuant to the Guarantees. *See supra* Section I.E. Finally, BOW set forth the damages Mr. Stadler owed pursuant to the Leases and the Guarantees. *See supra* Section I.F. Mr. Stadler did not respond to BOW's arguments regarding its breach of contract and therefore has waived the opportunity to do so. *Laborers' Int'l Union of N. Am. v. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (arguments not presented to the district court in response to summary judgment are waived). Accordingly, BOW has set forth sufficient evidence to establish its claim for breach of contract against Mr. Stadler.

## IV.
### CONCLUSION

For the foregoing reasons, the Court finds as a matter of law that BOW has established its right to recover on the Guarantees executed by Mr. Stadler. Accordingly, the Court **GRANTS** BOW's Motion for Summary Judgment. [Filing No. 45.] The Court notes that, according to BOW, interest will continue to accrue until judgment is issued. The Court requests that BOW prepare a full damage calculation – including attorneys' fees and costs – within 14 days, calculating the precise amount of judgment as of November 15, 2017. It is the Court's intention to enter final judgment on that date.

Date: 11/1/2017

*[signature]*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Chelsea R. Stanley
STITES & HARBISON, LLP (Jeffersonville)
cstanley@stites.com

Neal F. Bailen
STITES & HARBISON, LLP (Jeffersonville)
nbailen@stites.com

John R. Humphrey
TAFT STETTINIUS & HOLLISTER LLP
jhumphrey@taftlaw.com